IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                              2:12-cv-02263-MA

              Plaintiff,                    OPINION AND ORDER

    v.

1309 FOURTH STREET, LA GRANDE,
UNION COUNTY, STATE AND
DISTRICT OF OREGON, REAL
PROPERTY WITH BUILDINGS,
APPURTENANCES, AND
IMPROVEMENTS, *in rem*,

              Defendant.

S. AMANDA MARSHALL
United States Attorney
District of Oregon
KATHLEEN BICKERS
Assistant U.S. Attorney
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902

    Attorney for Plaintiff

WES WILLIAMS
Attorney at Law
115 Elm Street
La Grande, Oregon 97850

    Attorney for Claimant Kathy Lepper

1 - OPINION AND ORDER

MARSH, Judge

The Government brings this forfeiture proceeding pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356 & 1395; and 19 U.S.C. § 1610. Currently before the court is the Government's motion for summary judgment (#22). For the reasons set forth below, the motion is GRANTED.

**BACKGROUND**

On May 22, 2008, a Confidential Reliable Informant (CRI), working with members of the Oregon State Police (OSP) and the Union Wallowa Drug Task Force, purchased marijuana from Calvin Perry Kiesecker. Complaint (#1), Declaration of OSP Detective Sergeant Daniel D. Conner at ¶ 7; Govt.'s Reply Brief (#37), Declaration of OSP Sergeant David Aydelotte, Exh. A at 1.

Prior to the sale, the CRI ordered approximately 10 ounces of marijuana from Kiesecker. Conner Dec. at ¶ 7; Aydelotte Dec., Exh. A at 3. Shortly thereafter, Kiesecker was seen by officers entering the residence of Tom Bobbitt, located at 1309 Fourth Street in La Grande, Oregon, empty handed and leaving with a white plastic grocery bag which appeared to contain something. Govt.'s Reply (#37), Declaration of Union County Sergeant William Miller at ¶ 1; Aydelotte Dec. at ¶ 2 & Exh. A at 4. Kiesecker was later seen giving the CRI the same bag (later determined to be containing a

ziplock bag of marijuana) in exchange for $2000.00.    Aydelotte Dec., Exh. A at 5; Conner Dec. at ¶ 7.[1]

As a result of the foregoing, police executed a search warrant at Tom Bobbitt's residence and seized several firearms, $11,310.00 in U.S. currency, bank records, purported drug records,[2] drug packaging material, triple beam scales, masking agents, and approximately 8 3/4 pounds of marijuana. Aydelotte Dec., Exh. A at 6; Conner Dec. at ¶¶ 8-18 & 35-37.    During the course of the search, officers located hidden compartments throughout the residence, as well as a locked room in the basement where the marijuana, scales, and packaging material were found. Conner Dec. at ¶¶ 9 & 11-14.    Bobbitt was placed under arrest and charged with unlawful possession and delivery of marijuana within 1,000 feet of a school. Connor Dec. at ¶ 18; Govt.'s Motion and Memo. (#22), Exh. A at 9-10.

On May 23, 2008, Detective Aydelotte went to Bobbitt's residence to leave a receipt detailing the items seized from the property. Aydelotte Dec. at ¶ 3 & Exh. B at 2.    Claimant Kathy Lepper (Bobbitt's sister) and Elysia Hudson (Bobbitt's long-term

---

[1] Although latent fingerprints were found on the ziplock bag, Bobbitt was excluded as a source of the prints.    Declaration of Wes Williams (#27), Exhs. 122-23.

[2] The parties' experts disagree as to whether the financial records seized reflect drug transactions. *See* Conner Dec. at ¶¶ 15-16, 35-38; Declaration of Pat Montgomery (#31) at ¶¶ 6-17.

girlfriend) were at the house.  Aydelotte Dec. at ¶ 3 & Exh. B at 2; Declaration of Kathy Lepper (#26) at ¶¶ 21-22; Declaration of Elysia Hudson (#38) at ¶ 4.  According to Detective Aydelotte, Claimant asked if her brother's bank accounts, house, or van would be seized, and if a medical marijuana card "might help."  Aydelotte Dec. at ¶¶ 3-4 & Exh. B at 3; Hudson Dec. at ¶ 4.  Claimant denies making these statements.  Lepper Dec. at ¶ 23.

Also on May 23, 2008, Claimant attended Bobbitt's arraignment where he was charged with one count of manufacturing marijuana within 1,000 feet of a school, two counts of unlawful delivery of marijuana within 1,000 feet of a school, and one count of possession of marijuana.  Lepper Dec. at ¶ 24 & Exh. 106.  Claimant posted $4,000 in bond to secure her brother's release from custody. *Id.* at ¶¶ 19 & 25, & Exh. 108.

On May 27, 2008, Bobbitt executed a Bargain and Sale Deed transferring the 1309 Fourth Street Property to Claimant.  The consideration listed on the Bargain and Sale Deed was "love and affection."  Govt.'s Motion and Memo. (#22), Exh. A at 4.  On June 16, 2008, the deed was re-recorded to change the consideration to "other."  *Id.*, Exh. A at 6-7.  On that same date, Claimant executed a document stating that "[t]he enclosed savings bonds valued at 80,000 today are in exchange for 1309 Fourth Street, La Grande, OR -- *previously* owned by Tom Bobbitt.  Lepper Dec. at ¶ 33 & Exh. 110 (emphasis added); Declaration of Annette Aschenbrenner (#30) at ¶¶

4 - OPINION AND ORDER

2-3. Bobbitt continued to live on the property despite the transfer of ownership. Lepper Dec. at ¶ 36.

On July 21, 2008, Union County Deputy District Attorney Jason Larimer filed a "Notice of Intent to Forfeit," declaring his intent to initiate forfeiture proceedings against the 1309 Fourth Street Property. *Id.*, Exh. 113. On July 28, 2008, a Superseding Indictment was issued containing a forfeiture provision against the property, and a *lis pendens* was filed on the property. *Id.* at ¶ 38 & Exhs. 113-15. On that same date, Claimant wrote the following letter to the Deputy District Attorney:

> My brother's attorney just gave me the notice of intent to forfeit 1309 4th Street, La Grande. I purchased this piece of property on *6/18/08*. I checked with your local escrow office who said there was no lien on this piece & I was OK to purchase it.
>
> My brother TOM BOBBITT needed the money to pay for his defense – his checking account has been locked as well as his inheritance money from his safe deposit box – he had to have money both to survive & defend himself.

*Id.* at ¶ 40 & Exh. 116 (emphasis added).

In August, 2008, the state seized the property, and police required Bobbitt to vacate the premises. *Id.* at ¶ 39. In October, 2008, the state court ordered that the property be restored to Claimant pending the criminal proceedings against Bobbitt. *Id.* at ¶ 43 & Exh. 119; *see* ORS 131.573(4)(a) & 131.576(2).

Claimant began making repairs to the house, and Claimant's daughter, Dawn Norman, lived in the home until July, 2010. Lepper

Dec. at ¶¶ 44-46; Declaration of Dawn Norman (#29) at ¶¶ 15-16. Bobbitt moved back into the home in February, 2012, after being diagnosed with Mesothelioma. Lepper Dec. at ¶ 47. Bobbitt died on August 10, 2012, and the state criminal charges against him were dismissed. Conner Dec. at ¶ 30.

On December 17, 2012, the Government filed the instant proceeding, seeking forfeiture of the 1309 Fourth Street Property on the basis that it was used or intended to be used to facilitate a drug offense. On March 9, 2013, Claimant filed a claim to the property asserting that she is the fee owner of the property. Claim (#6) at 2. In her answer, Claimant contends that she is an innocent owner under 18 U.S.C. § 983(d)(3), because at the time she acquired her interest in the property, she was a bona fide purchaser for value and did not know, and was reasonably without cause to believe, that the property was subject to forfeiture. Answer (#17) at 2.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). The moving party bears the burden of proving the absence of a genuine dispute of material fact. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1014 (9th Cir. 2012). A genuine dispute of fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

This court reviews the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of that party. *Tolan*, 134 S.Ct. at 1863; *Maxwell v. County of San Diego*, 2012 WL 4017462 *2 (9th Cir. Sept. 13, 2012), *reh'g. en banc denied*, 708 F.3d 1075 (9th Cir. 2013). In the civil forfeiture context, summary judgment procedures must necessarily be construed in light of the statutory law of forfeitures, and the procedural requirements set forth therein. *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 979 (9th Cir. 2002).

## DISCUSSION

### I.   Standing to Challenge Forfeiture

Article III standing is a threshold question in every federal case. *United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, Cal.*, 385 F.3d 1187, 1191 (9th Cir. 2004). In a civil forfeiture proceeding, "this determination turns upon whether the Claimant has a sufficient interest in the property to create a case or controversy." *Id.* Claimant's burden is not a heavy one, she need only demonstrate a *colorable interest* in the property, for example, by showing actual possession, control, title, or financial stake." *Id. (emphasis added)*; *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637-38 (9th Cir. 2012).

7 - OPINION AND ORDER

To withstand a motion for summary judgment, a forfeiture claimant cannot rely on mere allegations, and instead must set forth by affidavit or other evidence specific facts to support a finding that she has an ownership or possessory interest in the property. *$133,420.00 in U.S. Currency*, 672 F.3d at 638.

The Government contends that Claimant lacks standing because she lacks a valid ownership interest in the defendant property. Specifically, the Government argues that the assignment of the defendant property from Bobbitt to Claimant was fraudulent under Oregon's Uniform Fraudulent Transfer Act (UFTA), because it was intended to "hinder, delay, or defraud" the Government's forfeiture action. In response, Claimant contends that there is a triable issue of fact as to whether she has standing. Claimant argues that she has produced evidence that Bobbitt did not intend to defraud the Government, and that she took the property in good faith and for a reasonably equivalent value. For the reasons set forth below, I conclude that there is a genuine dispute of material fact as to Claimant's standing.

Whether a claimant has an ownership interest in property is determined under the law of the state in which the interest arose. *Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d at 1191 & n.3; *see also United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119 (9th Cir. 2004). Under Oregon law, a transfer of assets is fraudulent if it is made by a debtor with an actual

intent to hinder, delay, or defraud a creditor.  ORS 95.230(1)(a).

In determining whether a transfer was made with "actual intent to hinder, delay, or defraud," a court may consider, *among other things*, the following factors set forth in ORS 95.230(2):

(a) The transfer or obligation was to an insider;

(b) The debtor had retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor had absconded;

(g) The debtor had removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

"A transfer . . . is not voidable under ORS 95.230(1)(a) as against a person who took in good faith and for a reasonably equivalent value . . . ."  ORS 95.270(1).

A.    **Government's Evidence of Fraud**

The Government argues that the fraudulent nature of Bobbitt's transfer of the 1309 Fourth Street Property to Claimant is evidence by the following:

(1) the transfer was to an insider (his sister);

(2) Bobbitt intended that the transfer would be temporary and he ultimately would maintain possession of the property (as evidence by Claimant's failure to put the savings bonds in Bobbitt's name or change the beneficiary and his continued presence on the property);[3]

(3) before the transfer was made, Bobbitt was charged with drug trafficking;

(4) the consideration received at the time of the transfer was not reasonably equivalent to the value of the asset and was not "authentic." Bobbitt and Claimant exchanged fake consideration--first "love and affection" and then savings bonds which were of no value to Bobbitt;

(5) it is likely that Bobbitt was insolvent at the time of the transfer because he had no funds to pay for his defense;[4]

(6) the transfer occurred shortly after the property became subject to forfeiture.

---

[3] I do not consider statements allegedly made by Elysia Hudson in a telephone interview (Govt.'s Motion and Memo. (#22), Exh. A at 12-19) to support this assertion because the interview transcript has not been authenticated. *See* Fed. R. Evid. 901(a).

[4] Claimant argues that Bobbitt was not insolvent and points to the fact that police returned $80,000 of the seized funds to Bobbitt. However, the seized funds were not returned until February 6, 2009 (months after the property transfer). *See* Leeper Dec. at ¶ 45; Conner Dec. at ¶ 25.

Additionally, the Government contends that Claimant's lack of good faith in purchasing the property is demonstrated by the fact that:

(1) Claimant was aware of the criminal charges against Bobbitt prior to the transfer;

(2) Claimant knew Bobbitt was a drug dealer, participated in the drug activity, and was aware of the fact that drug dealers can lose their homes for their crimes;

-Oregon State Police Detective David Aydelotte and Elysia Hudson both state that, the day after Bobbitt's arrest, Claimant asked whether Bobbitt's bank accounts, house, or van would be seized and whether a medical marijuana card "might help."

-According to Hudson, Claimant was well aware of Bobbitt's drug activity. Hudson states that she overheard Bobbitt speak with Claimant about selling marijuana to Claimant's friends and acquaintances.

(3) Claimant knew Bobbitt's house had been searched, property seized, and that his bank account had been frozen;

(4) Claimant's contact with a title company employee and Bobbitt's criminal lawyer concerning the propriety of the property transfer demonstrates she was concerned about whether Bobbitt could transfer good title.

The foregoing evidence is sufficient to meet the Government's burden of presenting evidence from which a trier of fact could conclude that the transfer of property was fraudulent. The undisputed evidence demonstrates that (1) Bobbitt transferred the property to his sister; (2) the deed was recorded twice (originally for love and affection and subsequently for bonds which remained

payable to Claimant); (3) the sale was made immediately after Bobbitt had been charged with drug offenses and marijuana and drug-packaging materials were seized from his home; and (4) he continued to reside in the home after the sale. Accordingly, the burden shifts to Claimant to demonstrate a genuine dispute of material fact as to her ownership. *See Real Property Located at 5208 Los Franciscos*, 385 F.3d at 1192.

B.   **Claimant's Evidence Concerning Fraud and Good Faith**

Claimant contends that her brother sold her the 1309 Fourth Street property "to ensure he had enough money to pay an attorney to defend him and other bills, and get on with his life." Lepper Dec. at ¶¶ 29, 31, 40, 42 & *see also* Exhs. 116 & 118. She states that neither she nor Bobbitt knew that his house might be in jeopardy of forfeiture, or that the sale of the house would be considered improper. *Id.* at ¶¶ 20, 23, & 26. Claimant explains that Lonnie Lester, an escrow officer with Eastern Oregon Title Company, informed her that there were no liens or encumbrances on Bobbitt's home and that there was no reason Bobbitt could not transfer it to Claimant. *Id.* at ¶¶ 20, 26, 31-32. Bobbitt's criminal attorney provided the same advice. *Id.* at ¶ 35.

Claimant further declares that she was motivated to purchase the property because it reminded her of property she had owned in Torrance, California. *Id.* at ¶¶ 2 & 18; Norman Dec. at ¶¶ 11-12. She states that when Bobbitt originally purchased the property, she

12 - OPINION AND ORDER

told him she would buy it if he ever wanted to sell the property. Lepper Dec. at ¶ 18; Norman Dec. at ¶ 13.   Claimant explains that she was interested in purchasing the home for resale after it was repaired/updated.   Lepper Dec. at ¶ 18; Norman Dec. at ¶ 11. Additionally, Claimant states that she had a fear that Bobbitt might give the house away during a drinking binge.   Claimant explains that Bobbitt was an alcoholic and had a history of giving away his possession when he was drunk.   Lepper Dec. at ¶¶ 15-16 & 19; Norman Dec. at ¶¶ 9-10.

Claimant declares that the savings bonds which were exchanged as consideration for the sale remained in her name so as not to lose interest from cashing them out.   Lepper Dec. at ¶¶ 42, 48-49; see also Norman Dec. at ¶ 14; Declaration of Ronald Schenck (#34) at ¶ 3.   She further states that the purchase price of $90,000 was a reasonably equivalent value given the fact that Bobbitt purchased the property in 2005 for $73,065.   Leeper Dec. at ¶¶ 17 & 30 & Exh. 103.   Finally, Claimant declares that she permitted her brother to live on the property after the sale because his bail release agreement required him to do so, and ultimately to enable her to provide him care during the final months of his life.   Id. at ¶¶ 24, 36, 39 & 47 & Exh. 107.

Given the low threshold to establish standing, I conclude that there is a genuine issue of material fact as to whether Claimant has a colorable interest in the property.   Although the government

has submitted evidence to support a finding that the transfer of property was intended to hinder its forfeiture, Claimant has offered sufficient evidence to create an issue of fact as to the validity of the transfer under Oregon law, as well as to whether she obtained the property in good faith.  Accordingly, summary judgment is not warranted on the issue of standing.

## II.    Forfeitability & Innocent Owner Defense

The government also moves for summary judgment on the basis that the property is forfeitable under 18 U.S.C. § 983(c)(1) & (3), and that there is no genuine dispute of fact as to whether Claimant is an "innocent owner" under § 983(d)(1).  Claimant opposes summary judgment on the basis that the government has failed to demonstrate that the property is forfeitable, and because she acted in good faith in purchasing the property.  For the reasons set forth below, I conclude that summary judgment is warranted.

### A.    Property is Forfeitable

The Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, creates a burden-shifting scheme applicable in the summary judgment context.  The initial burden "is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1); *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013); *United States v. Ferro*, 681 F.3d 1105, 1109 (9th Cir. 2012).  If the government's theory of the case is that the property was used

in or to facilitate the commission of a criminal offense, the government must prove that there was a substantial connection between the property and the offense.    18 U.S.C. § 983(c)(3).    A "[s]ubstantial connection may be established by showing that use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (internal quotations omitted, construing 18 U.S.C. § 853).

The determination of whether the government has met its burden of proof is based on the aggregate facts, including circumstantial evidence.    *Herder*, 594 F.3d at 364; *United States v. $14,000 in U.S. Currency*, 2014 WL 1230497, *3 (D.Ariz. Mar. 25, 2014); *United States v. Approximately $67,391 in U.S. Currency*, 2013 WL 5645349, *9 (N.D.Cal. Oct. 15, 2013); *see Currency, U.S. $42,500.00*, 283 F.3d at 980 (addressing proof of probable cause).

In the instant proceeding, the aggregate facts demonstrate that there is no genuine dispute of fact as to whether the government has sustained its initial burden to show, by a preponderance of the evidence, that (1) Bobbitt used or intended to use the defendant property to facilitate the May 22, 2008 drug sale by Kiesecker to the CRI; and (2) that there is a substantial connection between the property and the criminal offense.

As outlined above, it is undisputed that (1) on May 22, 2008, there was a controlled buy of marijuana by a CRI from Calvin

Kiesecker; (2) prior to the sale, the CRI ordered approximately 10
ounces of marijuana from Kiesecker; (3) police observed Kiesecker
enter Bobbitt's residence, remain for approximately 15 minutes, and
exit with a white plastic grocery bag containing something; (4) the
marijuana sold to the CRI was in the same bag; (5) police searched
Bobbitt's home and seized firearms, $11,310.00 in currency, triple
beam scales, drug package materials, 8 3/4 pounds of marijuana, and
masking agents in a large duffel bag; (6) police located hidden
compartments in Bobbitt's house and the seized marijuana was found
in a locked room in the basement with the scales and packaging
material; and (7) Bobbitt admitted to police that he did not have
a medical marijuana card and that the seized marijuana came from
Mexico.[5]  Additionally, Elysia Hudson declares that she personally
observed Bobbitt selling marijuana for many years prior to his
arrest in 2008, she overheard Bobbitt speak to Claimant about
selling marijuana, and she heard Bobbitt admit to his attorney, Wes
Williams, that he had been selling marijuana for many years prior
to his arrest.

   Claimant's evidence that Kiesecker denies getting the
marijuana from Bobbitt, that Bobbitt's fingerprints were not
identified on the ziplock bag containing the marijuana, and that

---

   [5] I conclude that Bobbitt's statements to law enforcement
are admissible as statements against interest made by a declarant
who has since died.  See Fed. R. Evid. 804(b)(3)(A).

Claimant's daughter never saw evidence of drug activity when her art studio was located in Bobbitt's basement from 2005-07, does not create a genuine issue of fact *as to whether the government has satisfied its initial burden to prove forfeitability by a preponderance of the evidence.* Further, I reject Claimant's suggestion that the evidence supports only a finding that Bobbitt *possessed* marijuana, and not that he *delivered* it. Accordingly, the burden shifts to Claimant to establish that she is an innocent owner.

**B.    Innocent Owner Defense**

Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." The claimant bears the burden of proving that he or she is an innocent owner by a preponderance of the evidence. 18 U.S.C. § 983(d)(1); *Ferro*, 681 F.3d at 1109. Where, as here, the claimant purchased the property after the alleged illegal conduct occurred, the claimant is an "innocent owner" only if she (1) was a bona fide purchaser for value; and (2) did not know and was reasonably without cause to believe that the property was subject to forfeiture. 18 U.S.C. § 983(d)(3)(A).

• **Bona Fide Purchaser for Value**

Because CAFRA does not define "bona fide purchaser for value," many courts have borrowed the construction given to the same language in the Continuing Criminal Enterprise Act (21 U.S.C.

§ 853(n)(b)(B)).   *See United States v. Contents of Smith Barney Citigroup Acct. No. 34-19*, 482 Fed. Appx. 134, 137 n. 2 (6th Cir. June 5, 2012); *United States v. Munson*, 477 Fed. Appx. 57, *8 (4th Cir. Apr. 17, 2012); *U.S. v. Real Prop. Located at 148 Maunalanikai Place in Honolulu Hawaii*, 2008 WL 3166799, *10 (D.Hawai'i Aug. 6, 2008); *United States v. One 1996 Vector M12*, 442 F.Supp.2d 482, 486 (S.D.Ohio 2005); *United States v. 198 Training Field Rd.*, 2004 WL 1305875 *2 (D.Mass. June 14, 2004).

Consequently, courts have defined a "bona fide purchaser for value" (under § 983(d)(3)(A)(i)), as one who gives value in an *arms-length transaction* with the expectation that he or she will receive equivalent value in return.   *Contents of Smith Barney Citigroup Acct.*, 482 Fed. Appx. at 137; *Munson*, 477 Fed. Appx. 57 *8; *United States v. Phillips*, 2013 WL 2156377 *3 (E.D.Va May 2, 2013); *United States v. Real Property Commonly Known as 113 Maynard Ave., N.W., Grand Rapids, Michigan, Kent Cty.*, 834 F.Supp.2d 713, 716 (W.D. Mich. 2011); *Real Property Located at 148 Maunalanikai Place in Honolulu Hawaii*, 2008 WL 3166799, *10; *One 1996 Vector M12*, 442 F.Supp.2d at 486; *198 Training Field Rd.*, 2004 WL 1305875 *2; *see also United States v. Huntington Nat. Bank*, 682 F.3d 429 (6th Cir. 2012) (federal law controls who qualifies as a bona fide purchaser for value).

I agree with the foregoing cases and conclude that a bona purchaser for value must obtain title in an arm's-length

transaction.   Because determining whether a purchaser is "bona fide" is especially difficult in intra-familial conveyances, courts properly consider whether the transaction was executed at arm's length.   *United States v. Real Property Located at 6124 Mary Lane Dr., San Diego, Calif.*, 2008 WL 3925074 (W.D.N.C. Aug. 20, 2008).

The government contends that Claimant is not a bona fide purchaser for value because (1) she obtained the property through a fraudulent conveyance in violation of state law; (2) she provided no consideration at the time the property was transferred; (3) the savings bonds subsequently provided as consideration were of no monetary value to anyone other than Claimant; and (4) no party dealing at arm's length would accept savings bonds issued in someone else's name in exchange for a house.

In response, Claimant attests that she paid valuable consideration for the property.   According to Claimant, the sequence of events leading to the sale of the 1309 Fourth Street Property occurred as follows:

1.   On May 27, 2008, Claimant offers to purchase the property for $80,000, and Bobbitt agrees.   Lepper Dec. at ¶ 19.   Claimant "decided it would be best to allow Tom to convey the house to [her] for the time being and then [they] would make sure [they] agreed on the price when he was sober."   *Id.*

2.   On May 27, 2008, Bobbitt signs and records a Bargain and Sale Deed transferring ownership of the property to Claimant for the consideration of "love and affection;" *Id.* at ¶ 20 & Exh. 105.

3.    On or about June 16, 2008, Bobbitt and Claimant "were ready to exchange the money [they] had agreed to, but added an additional $10,000 to the purchase price (reflecting monies Claimant lent Bobbitt for bail and living expenses). Lepper Dec. at ¶¶ 29-30.

4.    On June 16, 2008, Claimant retrieves savings bonds from her safety deposit box valued at $80,000 to give Bobbitt in exchange for the property. On that same day, she executes a document stating that "the enclosed savings bonds valued at 80,000 today are in exchange for 1309 4th Street, La Grande, OR – *previously owned* by Tom Bobbitt." *Id.* at ¶ 33 & Exh. 110 (emphasis added).

5.    Bobbitt and Claimant orally agree to leave the savings bonds payable to Claimant because they do not want to lose any interest from cashing out the bonds before they mature. When Bobbitt needs money, Claimant will provide it to him and he will return bonds to her with the same face value. Claimant explains that this agreement was effective because they "*were family and trusted each other.*" Lepper Dec. at ¶ 48 (emphasis added); Norman Dec. at ¶ 14.

6.    On June 18, 2008, Bobbitt and Claimant re-record the Bargain and Sale Deed to reflect that the consideration paid for the transfer was "other." Lepper Dec. at ¶¶ 32 & 34 & Exhs. 111.

7.    Claimant agrees to permit Bobbitt to live in the house until his criminal case is resolved provided that he pays Claimant's "house expenses." This agreement is in accord with Bobbitt's bail release agreement wherein he agreed to reside at the property. Lepper Dec. at ¶ 36 & Exh. 107.

Based on the foregoing, I conclude that there is no genuine dispute of material fact as to whether Claimant was a *bona fide* purchaser for value because no reasonable jury could conclude that the property was transferred in an arm's-length transaction. A

seller in an arm's-length transaction would not record a bargain and sale deed for "love and affection," based upon an oral agreement that the actual sales price would be determined at a later date.[6]  Moreover, a seller in an arm's-length transaction would not accept as consideration savings bonds payable to the buyer (or to the buyer's daughter in the event of the buyer's death), based only on an oral agreement that they would be cashed out on an "as needed" basis by the buyer.[7]  Indeed, Claimant concedes that this agreement was based on the fact that they "were family and trusted each other."

Finally, given the familial relationship between Bobbitt and Claimant, Claimant's payment in the form of savings bonds weeks after the Bargain and Sale deed was recorded, her modification of the agreed-upon sale price to include an additional $10,000 (without any new consideration), and the fact that Bobbitt remained on the property after the sale (for "housing expenses" only), re-enforce the conclusion that there is no genuine issue of fact as to whether Claimant obtained the property in an arm's-length transaction.  Because I find that there is no genuine issue of fact

---

[6] See *Halleck v. Halleck*, 216 Or. 23, 27-28, 337 P.2d 330 (1959) (recording of deed creates presumption of delivery).

[7] See *United States v. Chandler*, 410 U.S. 257, 260-61 (1973) (per curiam) (*inter vivos* delivery of bonds by decedent to her grandchildren, without reissuing the bonds in the grandchildren's names, did not remove bonds from decedent's estate).

as to whether Claimant was a bona fide purchaser for value, I need not address whether she acted in good faith.

## CONCLUSION

Based on the foregoing, the government's motion for summary judgment (#22) is GRANTED. It is FURTHER ORDERED that Claimant may file a petition by April 2, 2015, demonstrating that the forfeiture of the property is excessive. The government shall file a response by April 16, 2015. Claimant may file a reply by April 30, 2015, at which time the petition shall be taken under advisement.

IT IS SO ORDERED.

DATED this _17_ day of February, 2015.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge